1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

THOMAS SEANEZ, an individual,

              Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,
a Delaware Corporation, John Doe 1, an
individual, and DOES 2 THROUGH 20,
inclusive

              Defendants.

Case No. 1:21-CV-00553-AWI-HBK

**ORDER GRANTING PLAINTIFF'S
MOTION TO REMAND AND
DENYING DEFENDANT'S MOTION
TO DISMISS**

(Doc. Nos. 4 and 5)

     Plaintiff Thomas Seanez filed this action in Fresno County Superior Court on January 5, 2021, alleging claims for discrimination, wrongful termination and defamation against his former employer, Union Pacific Railroad Company ("Union Pacific"), as well as a claim for defamation against an unnamed former co-worker sued as "John Doe 1." Doc. No. 1 at 9. Union Pacific removed the action to this Court on March 31, 2021 and filed a motion to dismiss on April 7, 2021. Doc. Nos. 1, 4. On April 15, 2021, Seanez filed a motion to remand. Doc. No. 5. Both motions have been fully briefed and the Court has deemed both motions suitable for decision without oral argument pursuant to Local Rule 230(g) of the United States District Court for the Eastern District of California. See Doc. No. 11. For the reasons set forth below, Seanez's motion

1    to remand will be granted and Union Pacific's motion to dismiss will be denied as moot.

2                                          **BACKGROUND**

3            The relevant allegations in the Complaint are as follows:

4            Seanez is a resident of California who was more than 40 years of age at all times relevant

5    to this action. Doc. No. 1 at 10:2-6. Union Pacific is a corporation that was formed under

6    Delaware law and that has its principal place of business in Nebraska. Id. at 10:2-8.[1]

7            Seanez was employed by Union Pacific for 40 years, most recently as a locomotive

8    engineer in Union Pacific's Fresno, California location. Doc. No. 1 at 11:19-21. Approximately 20

9    years ago, while employed by Union Pacific, Seanez severely injured his left arm in a motorcycle

10   accident. Id. at 11:22-23. Seanez missed four months of work due to the accident, then returned to

11   work at Union Pacific as a locomotive engineer, until Union Pacific terminated his employment in

12   July 2019. Id. at 11:23-25.

13           In May 2019, John Doe 1 sent an anonymous letter (the "May 2019 Letter") to Union

14   Pacific's headquarters in Omaha, Nebraska that stated as follows:

15               I am a conductor/brakeman working out of JQ292 Fresno, California. Locomotive
                 Engineer Tom Seanez is a working engineer working out of Fresno, California as
16               well and I am concerned about my safety and others working with Mr. Seanez. He
                 only has use of one arm due to a motorcycle crash, and now he deems [sic] to be
17               losing any strength or use of his good hand. I have watched him struggle to climb
                 aboard locomotives but now he struggles to control the locomotive while operating
18               it. I have to call for him to stop far in advance while working local switching
                 operations and constantly am tieing [sic] extra brakes on cars hoping not to shove
19               over bumpers or into other cars. I worry about young and new employees working
                 with him that are not aware of his extra stopping space and help he needs on a daily
20               basis. A new employee asked him to hand him paperwork recently and he dropped
                 the paperwork due to his lack of grip. Please help me/us working around him to not
21               be injured or get killed.

22   Doc. No. 1 at 12:2-12. The envelope was postmarked May 22, 2019 from Fresno, California and

23   the return address was Union Pacific's facility in Roseville, California. Id. at 12:11-14.

24           On May 30, 2019, an occupational nurse at Union Pacific informed Seanez that he was

25   being "taken out of service." Doc. No. 1 at 12:15-20. A "ride check" was then scheduled, which

26

27   ───────────────────────

28   [1] Page citations for documents filed with the Court electronically are to page numbers in the CM/ECF stamp at the top
     of each page.

                                                    2

1    Seanez "passed with a score of 100%." Id. at 12:16-17. In June 2019,[2] Seanez was summoned to

2    Union Pacific's Roseville, California facility, without pay and at his own expense, to undergo a

3    "fitness for duty test." Id. at 12:17-18. On or about June 30, 2019, Seanez was terminated and

4    "required to take medical retirement." Id. at 12:18-19.

5         Based on these allegations, Seanez alleges a defamation claim against John Doe 1, as well

6    as a defamation claim, wrongful termination claim and several claims under California's Fair

7    Employment and Housing Act ("FEHA") against Union Pacific.[3] Doc. No. 1 at 9.

8                                          **LEGAL FRAMEWORK**

9         Federal courts are courts of limited jurisdiction that can hear only the types of cases that

10   they are authorized by the Constitution and Congress to adjudicate. Kokkonen v. Guardian Life

11   Ins. Co. of America, 511 U.S. 375, 377 (1994).

12        Under 28 U.S.C. § 1441,[4] "[a] defendant generally may remove an action filed in state

13   court if a federal district court would have had original jurisdiction over the action." Chavez v.

14   JPMorgan Chase & Co, 888 F.3d 413, 415-16 (9th Cir. 2018) (citing 28 U.S.C. § 1441(a) and

15   Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648 (9th Cir. 2016)). Thus, "[a]

16   defendant may remove an action to federal court based on federal question jurisdiction or diversity

17   jurisdiction." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C.

18   § 1441).

19        Union Pacific removed this action based on diversity jurisdiction, pursuant to 28 U.S.C. §

20   1332(a)(1) (addressing diversity jurisdiction) and 28 U.S.C. § 1441 (addressing the removal of

21

22   _____

23   [2] The Complaint states that Seanez was "summoned to Roseville" in "July 2019," but given the other dates alleged in
     the Complaint, including, for example, the alleged termination date of June 30, 2019, the Court assumes that that
     allegation was supposed to read "June 2019." In any event, it is irrelevant to the disposition of this motion.

24   [3] Specifically, the claims against Union Pacific are as follows: (1) disability discrimination in violation of California
     Government Code ("Government Code") § 12940, subd. (a); (2) age discrimination in violation of Government Code

25   § 12940, subd. (a); (3) failure to engage in interactive process in violation of Government Code §12940, subd. (n); (4)
     failure to make reasonable accommodation in violation of Government Code § 12940, subd. (m); (5) failure to take

26   reasonable steps to prevent discrimination in violation of Government Code § 12940, subd. (k); (6) wrongful
     termination in violation of public policy; and (7) defamation. See Doc. No. 1 at 9, 13-21.

27   [4] 28 U.S.C. § 1441(a) provides: "Except as otherwise expressly provided by Act of Congress, any civil action brought
     in a State court of which the district courts of the United States have original jurisdiction, may be removed by the

28   defendant or defendants, to the district court of the United States for the district and division embracing the place
     where such action is pending."

1  civil actions). Doc. No. 1 at 1. 28 U.S.C. § 1332(a)(1) gives federal courts original jurisdiction

2  over civil actions between "citizens of different states," "where the matter in controversy exceeds

3  the sum or value of $75,000, exclusive of interest and costs." "Section 1332 requires complete

4  diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the

5  defendants." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (citing

6  Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996)). Moreover, 28 U.S.C. § 1441(b)(2) provides

7  that, for removal based on diversity jurisdiction, no "properly joined" defendant may be a citizen

8  of the state in which the action is brought. See Homesales, Inc. v. Amora, 2012 WL 2061923, at

9  *1 (N.D. Cal. June 5, 2012).

10      28 U.S.C. § 1441 is strictly construed against removal jurisdiction; it is presumed that a

11  case lies outside the limited jurisdiction of the federal courts, and the burden of establishing the

12  contrary rests upon the party asserting jurisdiction. Geographic Expeditions, Inc. v. Estate of

13  Lhotka, 599 F.3d 1102, 1106-07 (9th Cir. 2010); see also, Hunter, 582 F.3d at 1042 ("the

14  defendant always has the burden of establishing that removal is proper" (citations and internal

15  quotation marks omitted)). "The strong presumption against removal jurisdiction" also means that

16  "the court resolves all ambiguity in favor of remand to state court." Hunter, 582 F.3d at 1042

17  (quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)) (internal quotation marks

18  omitted). That is, federal jurisdiction over a removed case "must be rejected if there is any doubt

19  as to the right of removal in the first instance." Geographic Expeditions, 599 F.3d at 1107 (quoting

20  Gaus, 980 F.2d at 567) (internal quotation marks omitted). "If at any time prior to judgment it

21  appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28

22  U.S.C. § 1447(c). Remand under 28 U.S.C. § 1447(c) "is mandatory, not discretionary." Bruns v.

23  NCUA, 122 F.3d 1251, 1257 (9th Cir. 1997). That is, the court "must dismiss a case when it

24  determines that it lacks subject matter jurisdiction, whether or not a party has filed a motion." Page

25  v. City of Southfield, 45 F.3d 128, 133 (6th Cir. 1995).

26                                    **DISCUSSION**

27      As stated above, Union Pacific removed this case based on diversity jurisdiction under 28

28  U.S.C. § 1332(a)(1).  See Doc. No. 1. Seanez does not dispute that Union Pacific is a diverse

1  defendant or that this action satisfies the amount in controversy requirement for diversity

2  jurisdiction. See Doc. No. 5. Thus, the question before the Court on the motion to remand is

3  whether Union Pacific, as the removing party, has met its burden to show that 28 U.S.C. §

4  1332(a)(1)'s complete diversity requirement has been satisfied. Seanez argues that allegations

5  indicating John Doe 1 is a California citizen are sufficiently specific to destroy diversity, even

6  though John Doe 1 is not named. Id. at 4:19-5:7. Union Pacific argues, in opposition, that John

7  Doe 1's citizenship should be disregarded because John Doe 1 was fraudulently joined in this

8  action, Doc. No. 8, Part III.B., and that, regardless, Seanez has not "produced any evidence" of

9  John Doe 1's citizenship. Id., Part III.C. Finally, Union Pacific contends that the Court should

10  sever the defamation claim against John Doe 1 for remand and exercise jurisdiction over claims

11  against Union Pacific if the Court finds that allegations regarding John Doe 1 destroy diversity

12  jurisdiction.[5] Id., Part III.D. The Court will address each of Union Pacific's arguments in turn.

13  **I.**   **Fraudulent Joinder**

14       **A.**    **Applicable Law**

15       The "fraudulent" inclusion of a non-diverse defendant creates an "exception to the

16  requirement of complete diversity" for diversity jurisdiction.  Morris, 236 F.3d at 1067; see

17  McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). Under the fraudulent-joinder

18  doctrine, "[j]oinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence

19  in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a

20  cause of action against a resident defendant, and the failure is obvious according to the settled

21  rules of the state.' " Weeping Hollow Ave. Trust v. Spencer, 831 F.3d 1110, 1113 (9th Cir. 2016)

22  (quoting Morris, 236 F.3d at 1067 and McCabe, 811 F.2d at 1339) (some internal quotation marks

23  omitted).

24       There is a "general presumption against fraudulent joinder," Hunter, 582 F.3d at 1046

25  _____

26  [5] Union Pacific also argues that "[t]he court may find fraudulent joinder where Plaintiff has plead false statements
    regarding the non-diverse party's citizenship." Doc. No. 8 at 8:3-7. The fraudulent joinder burden, however, is

27  squarely on the removing defendant. Union Pacific argues that the allegations regarding John Doe 1 are insufficient to
    destroy complete diversity but makes no attempt to show that the allegations in question are false. Thus, this

28  argument—which takes up all of two sentences in Union Pacific's opposition to the remand motion—does not merit
    further consideration.

1  (citing Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007)), and

2  prevailing on a theory of fraudulent joinder requires more than a showing that a complaint fails to

3  state a cause of action. See Davis v. Prentiss Props. Ltd., 66 F. Supp. 2d 1112, 1115 (C.D. Cal.

4  1999) ("The mere fact that a claim is ultimately unsuccessful does not necessarily mean that its

5  joinder was fraudulent. Thus, some room must exist between the standard for dismissal under Rule

6  12(b)(6), for example, and a finding of fraudulent joinder"); Johnson v. Owners Ins. Co., 2016 WL

7  4181230, at *2 (D. Ariz. Aug. 8, 2016) ("Because the failure to state a cause of action must be

8  'obvious,' fraudulent joinder scrutiny is more lenient toward the plaintiff than scrutiny under Rule

9  12(b)(6)." (citation omitted)). The Ninth Circuit has cited Eleventh Circuit precedent for the

10 proposition that "if there is any possibility that the state law might impose liability on a resident

11 defendant under the circumstances alleged in the complaint, the federal court cannot find that

12 joinder of the resident defendant was fraudulent, and remand is necessary." Hunter, 582 F.3d at

13 1044 (quoting Florence v. Crescent Res., LLC, 484 F.3d 1293, 1299 (11th Cir. 2007) (internal

14 quotation marks omitted)); see also, McGrann v. AT&T Mobility Servs., LLC, 2016 WL 6205596,

15 at *3 (E.D. Cal. Oct. 24, 2016) ("The removing party must prove that there is absolutely no

16 possibility that the plaintiff will be able to establish a cause of action against the in-state defendant

17 in state court, or that there has been outright fraud in the plaintiff's pleadings of jurisdictional

18 facts." (citation and internal quotation marks omitted)). Stated differently, if there is a "non-

19 fanciful possibility" that a plaintiff can state a claim against a non-diverse defendant under state

20 law, the district court must remand. Altman v. HO Sports Co., 2009 WL 2590425, at *2 (E.D. Cal.

21 Aug. 20, 2009) (Ishii, J.) (citations and internal quotation marks omitted).

22  **B.      Discussion**

23       Seanez's sole claim against Joe Doe 1 in this action is a claim for written defamation—or

24 libel—based on the May 2019 Letter. Doc. No. 1 at 11:28-12:10, 17:26-21:14. California defines

25 libel, in pertinent part, as "a false and unprivileged publication by writing ... which exposes any

26 person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or

27 which has a tendency to injure him in his occupation." Cal. Civ. Code, § 45. Union Pacific

28 contends Seanez cannot obtain judgment against John Doe 1 on his defamation claim—and that

1  John Doe 1 is therefore fraudulently joined in this action—because the statements in the May 2019

2  Letter are inactionable opinions and because the statements in the May 2019 Letter are protected

3  by common interest privilege under California law. In the Court's view, neither of these

4  arguments has merit.

5              1.      Statements of Opinion or Fact

6       "Although statements of fact may be actionable as libel, statements of opinion are

7  constitutionally protected." McGarry v. University of San Diego, 154 Cal. App. 4th 97, 112

8  (2007) (also stating that a "statement must contain a provable falsehood" to constitute

9  defamation). Thus, it is necessary to "distinguish between statements of fact and statements of

10  opinion for purposes of defamation liability." Id. at 112. California courts have developed a

11  "totality of the circumstances" test to distinguish between fact and opinion that involves

12  examining "the language of the statement" at issue, as well as the "context" in which a statement

13  was made. Baker v. Los Angeles Herald Exam'r, 42 Cal. 3d 254, 259–61 (1986) (citations

14  omitted). For language to give rise to defamation liability, it must be "reasonably susceptible of a

15  defamatory meaning," and language "cautiously phrased in terms of apparency … is less likely to

16  be reasonably understood as a statement of fact rather than opinion." Id. at 260-61. The contextual

17  analysis, for its part, involves "look[ing] at the nature and full content of the communication and

18  to the knowledge and understanding of the audience to whom the publication was directed." Id. at

19  261.

20       The May 2019 Letter on which the defamation claim in this action is based states that

21  Seanez "only ha[d] use of one arm"; that he was "losing any strength or use of his good hand";

22  that he "struggle[d]" to "climb aboard" and "control" locomotives; and that "he dropped []

23  paperwork due to his lack of grip." Doc. No. 1 at 12:2-8. Further, it states that Seanez needed

24  "help" on a daily basis, and that the author of the letter himself had to tie "extra brakes on cars"

25  and "call for [Seanez] to stop far in advance" to avoid collisions. Id. Such statements are made in

26  absolute terms—not "cautiously." They are also subject to proof and defamatory in the sense that

27  they could "injure [Seanez] in his occupation," which apparently requires some degree of physical

28  strength in at least one arm. See Cal. Civ. Code § 45. Moreover, the letter was allegedly authored

1    by a "conductor/brakeman" with knowledge of locomotive operations who worked directly with

2    Seanez, and thus had opportunity to observe Seanez and the operation of locomotives in his

3    charge. Doc. No. 1 at 12:2-8. It is hard to imagine that the intended audience (railroad

4    management) would not construe the letter as containing assertions of fact regarding Seanez's

5    physical limitations and the impact of those limitations on the safe operation of locomotives. The

6    Court therefore cannot find fraudulent joinder on the grounds that the May 2019 Letter constitutes

7    mere opinion.[6]

8              2.    Common Interest Privilege

9              Section 47 of the California Civil Code "extends a conditional privilege against defamation

10   to statements made without malice on subjects of mutual interests." Hui v. Sturbaum, 222 Cal.

11   App. 4th 1109, 1118–19 (2014) (citations omitted). Specifically, Section 47, subdivision (c), of the

12   California Civil Code protects a "publication or broadcast" made "[i]n a communication, without

13   malice, to a person interested, therein, (1) by one who is also interested, or (2) by one who stands

14   in such a relation to the person interested as to afford a reasonable ground for supposing the

15   motive for the communication to be innocent, or (3) who is requested by the person interested to

16   give the information." Cal. Civ. Code § 47, subd. (c). This privilege—which is often referred to as

17   a "common interest privilege"—"has been found to apply where the interest is something other

18   than mere general or idle curiosity, such as where the parties to the communication share a

19   contractual, business or similar relationship or the defendant is protecting his own pecuniary

20   interest." Klem v. Access Ins. Co., 17 Cal. App. 5th 595, 617 (2018) (citation and internal

21   quotation marks omitted).

22             A plaintiff can defeat the common interest privilege by showing that a statement was made

23   with malice. Hawran v. Hixson, 209 Cal. App. 4th 256, 288 (2012). For purposes of the common

---

[6] Defendants cite *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 965 (Cal. App. 4th Dist. 1993) for the proposition that "unless an employer's performance evaluation falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics or behavior…it cannot support a cause of action for [defamation]." Doc. No. 8 at 5:23-6:2. *Jensen*, however, has been interpreted to be limited to statements made as part of a performance evaluation. See McNamee v. Roman Catholic Diocese of Sacramento, 2015 WL 1469210, at *9 (E.D. Cal. Mar. 27, 2015). Since statements made outside that context are not subject to *Jensen*'s strictures, *Jensen* has no applicability here.

interest privilege, malice means that the defendant "(1) was motivated by hatred or ill will towards the plaintiff or (2) lacked reasonable grounds for [] belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." Schep v. Capital One, N.A., 12 Cal. App. 5th 1331, 1337 (2017) (citations and internal quotation marks omitted). "Inherent in the concept of reckless disregard for truth is the notion that it is the [defendant's] belief regarding the accuracy of his or her statements, rather than the truth of the underlying statements themselves, that is relevant to the malice determination." Noel v. River Hills Wilsons, Inc., 113 Cal. App. 4th 1363, 1371 (2003) (citation and internal punctuation omitted).

Union Pacific contends that Seanez cannot prevail on a defamation claim based on the May 2019 Letter because the May 2019 Letter is protected by the common interest privilege as communication between an employee and management regarding safety and Seanez "has absolutely no evidence of malice."[7] Doc. No. 7:3-8. Seanez, for his part, argues that John Doe 1 lacked reasonable grounds for belief in the truth of his statements that Seanez was unfit for his job because: (i) Seanez worked for Union Pacific as a locomotive engineer for 20 years "without issue" after his motorcycle accident; (ii) Seanez passed the "ride-check" triggered by John Doe 1's letter with a "100% score"; and (iii) John Doe 1 sent the letter anonymously to remote management in Nebraska, instead of immediately raising his supposedly-pressing safety concerns "in Fresno, where [Seanez] worked for 40 years and where everyone knew of [Seanez's] safety

---

[7] It is not clear how common interest privilege applies to fraudulent joinder analysis in connection with defamation claims. On the one hand, California courts characterize privilege as an affirmative defense to a defamation claim, see Tschirky v. Superior Court, 124 Cal. App. 3d 534, 538 (1981) ("The general rule is that a privilege must be pleaded as an affirmative defense."); see also, Taus v. Loftus, 40 Cal. 4th 683, 721 (2007) ("Under Civil Code section 47, subdivision (c), defendant generally bears the initial burden of establishing that the statement in question was made on a privileged occasion, and thereafter the burden shifts to plaintiff to establish that the statement was made with malice."), and the Ninth Circuit has recognized that "affirmative defenses … cannot be considered as a part of the fraudulent joinder analysis." Kwasniewski v. Sanofi-Aventis U.S., LLC, 637 Fed. Appx. 405, 406 (9th Cir. 2016) (citations omitted). On the other hand, defamation is defined as a "false and unprivileged publication" under California law, Cal. Civ. Code §§ 45, 46, suggesting that lack of privilege is an element of a defamation claim. And in practice, district courts consider privilege in fraudulent joinder analysis. See, e.g., Stewart v. Walgreen Co., 2016 WL 5922640, at *1 (C.D. Cal. Jan. 8, 2016); Sanchez v. Lane Bryant, Inc., 123 F. Supp. 3d 1238, 1244 (C.D. Cal. 2015). Given the past practice of other courts, this Court will address common interest privilege in the fraudulent joinder analysis. See Madayag v. McLane/Suneast, Inc., 2017 WL 30014, at *5, n.2 (E.D. Cal. Jan. 3, 2017) (Ishii, J.).

1 record." Doc. No. 9 at 4:1-22.

2      The Court agrees with Seanez. The content of the May 2019 Letter was putatively based on

3 John Doe 1's direct observation of Seanez with respect to matters—including physical strength,

4 use of limbs and collisions (or near collisions)—that a mere observer (and especially an observer

5 in John Doe 1's alleged position) could presumably assess accurately. To the extent it turns out

6 John Doe 1 is not compromised to the extent or in the manner described in the May 2019 Letter,

7 the Court sees no reason why a finder of fact could not conclude that John Doe 1 was lying about

8 Seanez's physical condition and job performance or, at minimum, recklessly making unfounded

9 statements that could foreseeably have an adverse effect on Seanez's employment prospects. See

10 St. Amant v. Thompson, 390 U.S. 727, 730–32 (1968) ("Professions of good faith will be unlikely

11 to prove persuasive … where a story is fabricated by the defendant [or] is the product of his

12 imagination …."); see also, Woods v. Asset Res., 2006 WL 3782704, at *5–6 (E.D. Cal. Dec. 21,

13 2006) ("Malice may be inferred from facts showing a lack of reasonable or probable cause to

14 believe in the truth of a defamatory statement; the privilege does not apply where there is a

15 knowing lie or the making of a damaging assertion without any reasonable backing.").

16      **C.**     **Conclusion Regarding Fraudulent Joinder**

17      For the foregoing reasons, the Court finds that Union Pacific has failed to meet its "heavy

18 burden" of establishing diversity jurisdiction through fraudulent joinder. See Bowles v.

19 Constellation Brands, Inc., 444 F. Supp. 3d 1161, 1180 (E.D. Cal. 2020).

20 **II.**     **Allegations Regarding John Doe 1**

21      28 U.S.C. § 1441(b) states: "In determining whether a civil action is removable on the

22 basis of the jurisdiction under section [28 U.S.C. §] 1332(a) …, the citizenship of defendants sued

23 under fictitious names shall be disregarded." District courts in the Ninth Circuit and elsewhere,

24 however, have split on how to handle "fictitiously named defendants described with sufficient

25 particularity to provide a clue as to their actual identity." See Sandoval v. Republic Servs., Inc.,

26 2018 WL 1989528, at *3 (C.D. Cal. Apr. 24, 2018) (citing Wong v. Rosenblatt, 2014 WL

27 1419080, at *4 (D. Or. Apr. 11, 2014)). Some district courts have concluded that the plain

28 language of 28 U.S.C. § 1441(b) can only be read to mean that courts may never consider

allegations relating to Doe defendants when assessing diversity for removal purposes, see, e.g., Goldsmith v. CVS Pharmacy, Inc., 2020 WL 1650750, at *4 (C.D. Cal. Apr. 3, 2020), while others have concluded that it can be appropriate to do so under some circumstances. See, e.g., Gardiner Family, LLC v. Crimson Res. Mgmt. Corp., 147 F. Supp. 3d 1029, 1036 (E.D. Cal. 2015) (O'Neill, J.) (weighing "whether the Plaintiffs' description of Doe defendants or their activities [wa]s specific enough as to suggest their identity, citizenship, or relationship to the action").

After a searching analysis involving 28 U.S.C. § 1441(b), applicable Ninth Circuit decisions and other relevant authority, a court in this district formulated the following rule: if "charges against [Doe defendants] are so general that no clues exist as to their identity, citizenship, or relationship to [an] action," Doe defendants are properly disregarded for purposes of diversity jurisdiction, but if, conversely, "allegations that concern [Doe defendants] provide a reasonable indication of their identity, the relationship to the action and their diversity-destroying citizenship, then the Court lacks diversity jurisdiction." Gardiner, 147 F. Supp. 3d at 1036; Robinson v. Lowe's Home Centers, LLC, 2015 WL 13236883, at *3 (E.D. Cal. Nov. 13, 2015) (O'Neill, J.). The analysis turns, in short, on whether the Doe defendant is "wholly fictitious" or whether the Doe defendant is described in such a way that "his or her identity cannot reasonably be questioned"— recognizing, in essence, that Doe defendants are not always mere placeholders and that allegations regarding Doe defendants can, in some cases, be more substantive than allegations found to destroy diversity in connection with named defendants. Compare Gardiner, 147 F. Supp. 3d at 1036 (disregarding "Does 1 through 50" for jurisdictional purposes on a finding that they were "wholly fictitious") with Sandoval, 2018 WL 1989528 at *4 (granting remand on finding that allegations regarding a Doe defendant "far exceed[ed] that which has been deemed sufficient to destroy diversity in other cases").

Other district courts in the Ninth Circuit have applied the same or similar reasoning,[8] and

---

[8] See, e.g., Barnes v. Costco Wholesale Corp., 2019 WL 6608735, at *2 (C.D. Cal. Dec. 4, 2019) (finding that allegations regarding Doe defendant's place of residence, place of employment, job duties and role in plaintiff's injuries destroyed diversity and necessitated remand); Sandoval, 2018 WL 1989528 at *4 (proper to consider fictitious defendant where complaint provides a "definite clue" as to defendant's identity); Collins v. Garfield Beach CVS,

1  the Court finds it persuasive in that it allows for removing cases involving Doe defendants added

2  under state law, see Gardiner, 147 F. Supp. 3d at 1035 (finding that "use of fictional defendants is

3  consistent with California state substantive law"), while taking account of well-settled limitations

4  on the jurisdiction of federal courts sitting in diversity and the heavy burden the law places on

5  defendants with respect to establishing jurisdiction for removal. See Gaus, 980 F.2d at 566 ("[t]he

6  strong presumption against removal jurisdiction means that the defendant always has the burden of

7  establishing that removal is proper") (citations and internal quotation marks omitted)).

8        Seanez contends that complete diversity is destroyed in this case by allegations, based on

9  the May 2019 Letter, that John Doe 1 was employed as a "conductor/brakeman" who worked with

10  Seanez at Union Pacific's Fresno, California location in 2019, in addition to allegations that John

11  Doe 1 was the author of the May 2019 Letter and that the May 2019 Letter had a Fresno,

12  California postmark and a Roseville, California return address. Doc. No. 5 at 4:19-5:5. Union

13  Pacific, for its part, does not dispute that courts can properly consider allegations going to the

14  citizenship of Doe defendants in some cases, see Doc. No. 8 at 2:19-21 (stating that "[u]nder well-

15  established principles, courts ignore the naming of fictitious defendants for the purposes of

16  diversity jurisdiction unless there is a 'definite clue' as to their identity"), but argues that

17  allegations regarding John Doe 1 do not destroy complete diversity in this case because they are

18  "speculative" and insufficient. Id. at 2:19, 8:16-23. Further, Union Pacific argues that it has "no

19  information regarding [John Doe 1's] identity" because the May 2019 Letter was sent

20  anonymously and that it has no obligation to identify John Doe 1 because Seanez has not made out

21  a prima facie defamation claim. Id. at 8, n.2.

22        The Court agrees with Seanez. Even assuming Union Pacific does not know and/or has no

23  obligation to disclose John Doe 1's identity, Seanez's allegations regarding John Doe 1 provide

24  clear indications John Doe 1 is a citizen of California for purposes of diversity jurisdiction,

25  particularly since it is not clear how John Doe 1 could have observed Seanez as described in the

27  LLC, 2017 WL 2734708, at *2 (C.D. Cal. June 26, 2017) (similar); Fisher v. Direct TV, Inc., 2013 WL 2152668, at
*4 (D. Mont. May 16, 2013) ("[W]here the allegations regarding the Doe defendants provide a reasonable indication
28  as to the identity of the defendants, the relationship of the defendants to the cause of action, and the citizenship of the
defendants which would destroy diversity jurisdiction, then diversity jurisdiction is lacking.").

1   May 2019 Letter (including, for example, the progressive deterioration of Seanez's right arm)

2   without being in Fresno on a continuing basis, and Fresno sits roughly in the center of California,

3   against a great mountain range and well beyond typical commuting distance to adjoining states.

4   Moreover, allegations regarding John Doe 1 collectively point to a single, discernable individual

5   with a distinct (and pivotal) role in this case. See Sandoval, 2018 WL 1989528 at *3. Finally,

6   Seanez's allegations are not "speculative" because they are based on the May 2019 Letter, and

7   they closely approximate allegations found to destroy complete diversity in other cases involving

8   Doe defendants.[9] See, e.g., Sandoval, 2018 WL 1989528 at *4 (remanding based on allegations as

9   to Doe defendant's employer, date of employment and first name, as well as allegations as to

10  certain communications involving the defendant).

11      In short, the Court finds that John Doe 1 is properly considered for purposes of diversity

12  jurisdiction because he is not a "wholly fictitious" defendant and the allegations in the Complaint

13  are "specific enough as to suggest [his] identity, citizenship, [and] relationship to the action." See

14  Gardiner, 147 F. Supp. 3d at 1036. Further, the Court finds that allegations regarding John Doe 1's

15  place of employment and involvement in this case are indicative of California domicile and that

16  Union Pacific has not met its burden on removal to show the complete diversity required for

17  diversity jurisdiction. See Hunter, 582 F.3d at 1042. Given the Court's finding that Union Pacific

18  has also failed to show fraudulent joinder, remand to state court is required.

19  **III.**    **Severance**

20      Union Pacific argues that, if the Court finds remand is warranted based on allegations

21  regarding John Doe 1, the defamation claim against John Doe 1 should be severed from the claims

22  against Union Pacific and remanded separately, while the claims against Union Pacific remain in

23  _____

24  [9] One arguable difference between this case and authority cited by Seanez is that Union Pacific claims not to know the
    identity of John Doe 1, see, e.g., Collins, 2017 WL 2734708 at *3, but preventing employers from improperly gaining

25  access to federal court by strategically withholding the identity of Doe defendants is but one of the rationales courts
    have set forth for considering allegations regarding Doe defendants in jurisdictional analysis. More important

26  considerations, in the Court's view, involve respecting the limited jurisdiction of federal courts and the proper
    allocation of the burden of proof on removal. See Carson v. Dunham, 121 U.S. 421, 425 (1887) (finding that the

27  burden of proof was on the removing defendant "to make out the jurisdiction of the circuit court" by showing that the
    plaintiff was a citizen of a different state); NewGen LLC v. Safe Cig, LLC, 840 F.3d 606, 613–14 (9th Cir. 2016)

28  ("The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and
    proving diversity jurisdiction.").

1   federal court. Doc. No. 8 at 9:3-10. According to Union Pacific, the "crux of [this] lawsuit is

2   wrongful termination" and the defamation claim is "independent of [Seanez's] wrongful

3   termination claims" because the May 2019 Letter "was not the reason for [Seanez's] discharge."

4   Id. at 8:11-17.

5          Regardless of whether the May 2019 Letter was the basis for Seanez's termination,

6   however, at least some of the claims against Union Pacific overlap the defamation claim against

7   John Doe 1 in that they require determining the extent to which Seanez was disabled and the

8   extent to which such disability affected Seanez's job performance. The First Cause of Action, for

9   example, alleges that Seanez was "able to perform all the essential functions of his job" but that

10  Union Pacific improperly used injuries resulting from his motorcycle accident to terminate him.

11  The Fourth Cause of Action, similarly, alleges that Union Pacific failed to make reasonable

12  accommodations for whatever disability Seanez suffered due to his motorcycle accident.  And in

13  any event, the defamation claim is alleged against Union Pacific, as well John Doe 1. The Court

14  sees no justification for litigating Seanez's physical condition and job performance—to say

15  nothing of legal issues attendant to a defamation claim—in two different forums, with the added

16  expense, waste of judicial resources and risk of inconsistent verdicts doing so would obviously

17  entail.

18                              **<u>CONCLUSION</u>**

19         For the foregoing reasons, the Court finds that Union Pacific has failed to meet its burden

20  to show that the Court has diversity jurisdiction over this action, as required for removal. Further,

21  the Court sees no justification for litigating claims against Union Pacific and John Doe 1

22  separately, given their factual similarity and legal overlap. The Court will therefore grant Seanez's

23  motion to remand and remand the action to state court in its entirety, without prejudice to Union

24  Pacific's removal rights under 28 U.S.C. § 1446(b)(3). In light of the disposition of the remand

25  motion, Union Pacific's motion to dismiss will be denied as moot.

26  //

27  //

28  //

1

## **ORDER**

2    Accordingly, IT IS HERBY ORDERED:

3        1.  Plaintiff's motion to remand (Doc. No. 5) is GRANTED;

4        2.  Defendant Union Pacific's motion to dismiss (Doc. No. 4) is DENIED as moot; and

5        3.  The Clerk of Court is DIRECTED to REMAND this case to Fresno County Superior

6           Court for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 1447(c).

7

8

9    IT IS SO ORDERED.

10   Dated: __June 10, 2021__          _____

                          SENIOR  DISTRICT  JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28